## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KIMBERLY GLANVILLE,        *

     Plaintiff,        *

v.        *        Civil Action No. EA-23-3395

THE MAYOR AND CITY COUNCIL     *
OF BALTIMORE, MARYLAND:
BALTIMORE POLICE DEPARTMENT,   *

     Defendant.        *

### MEMORANDUM OPINION

Plaintiff Kimberly Glanville initiated the above-captioned action against her employer, the Baltimore Police Department (BPD) on December 14, 2023, alleging claims of discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1983; and the Maryland Fair Employment Practices Act (MFEPA), Md. Code, State Gov't § 20-601 *et seq.*, and seeking damages, equitable relief, and attorney's fees and costs.[1] ECF No. 1. Pending before the Court is BPD's Motion to Dismiss. ECF No. 12. The motion is fully briefed and no hearing is necessary. ECF Nos. 12–13, 16; Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, BPD's motion is granted.

---

[1] The Complaint identifies the defendant in this action as "The Mayor and City Council of Baltimore: Baltimore Police Department." ECF No. 1. The pending motion to dismiss argues, among other things, that the defendant identified in the caption is not a legal entity capable of being sued. ECF No. 12-1 at 6 n.4. Ms. Glanville's Complaint was served on the Baltimore City Law Department (ECF No. 7) and refers to the defendant as "Baltimore Police Department," "Baltimore City Police Department," or "BPD" (*e.g.*, ECF No. 1 ¶ 16). The Court therefore construes the Complaint as being brought against the Baltimore Police Department (BPD). *Forrest* v. *Balt. City, Md.: Balt. Police Dep't*, Civil Action No. JMC-22-3220, 2023 WL 6381449, at *1 n.1 (D. Md. Sept. 29, 2023) (concluding that while complaint caption identified "Baltimore City, Maryland: Baltimore Police Department" as the defendant, complaint itself referred to party in the singular and it was "apparent that Plaintiff intends for BPD to be the sole Defendant in this case").

# I.    Background

Ms. Glanville's Complaint pleads six counts.  ECF No. 1.  Under Title VII, she pleads race and color discrimination (Counts I and II), hostile work environment (Count III), and retaliation (Count IV-Title VII).  Ms. Glanville also alleges that BPD violated her constitutional rights under 42 U.S.C. § 1983 (Count IV-§ 1983) and violated MFEPA (Count V).[2]

## A.    Factual Allegations[3]

Ms. Glanville is an African American police officer.  ECF No. 1 ¶¶ 20, 84.  She has been employed by BPD for over 27 years and currently holds the rank of Sergeant.  *Id.* at ¶ 20.  Ms. Glanville has been subject to inappropriate comments by her colleagues and "poor performance evaluations and disciplinary actions based upon allegations by other members without proper investigation."  *Id.* at ¶ 21.  BPD supervisors and upper management have "denied her trainings, harassed and demeaned her before other [o]fficers, involuntarily transferred her, opened baseless and unsustained charges against her, repeatedly denied her promotion opportunities to which she was entitled, and threatened [her] with termination."  *Id.* at ¶¶ 84, 106.  BPD also failed "to conduct a prompt and thorough investigation" into Ms. Glanville's allegations of discrimination, redress the issue, or protect her from further discrimination, punishing her instead for making complaints.  *Id.* at ¶ 132.  The Complaint alleges five categories of factual allegations: (1) the April 29, 2022 double homicide; (2) investigations causing four promotion deferrals; (3) the

---

[2]  The Complaint alleges two violations that are identified as "Count IV."  For the sake of clarity, the Court will identify refer to these two counts with the statute alleged to have been violated.

[3]  This factual summary is drawn from the allegations in the Complaint (ECF No. 1), which are accepted as true for the purposes of deciding this motion.  *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Belmora LLC* v. *Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016).

February 2023 suspension pending termination; (4) the August 2023 reassignment; and

(5) disparaging remarks and disparate treatment in 2018 and 2019.

On April 29, 2022, Ms. Glanville was working a shift when a double homicide occurred in her designated area.  *Id*. at ¶¶ 35–36.  At that time, however, Ms. Glanville was "deployed to be stationary to a mobile unit."  *Id*. at ¶ 36.  Ms. Glanville's supervisor Kurt Yourkovik, who is White, contacted her asking where she had been during the homicide and instructed her to write an administrative report to that effect.  *Id*. at ¶¶ 36–37.  Mr. Yourkovik stated that the instructions came from higher-ranking supervisor Mark Howe, who is also White.  *Id.* at ¶ 37.  Ms. Glanville was the only person made to write a report.  *Id*.  Body-worn camera footage of supervisors Mr. Yourkovik, Mr. Howe, and Jai Etwaroo at the double-homicide scene revealed that they had engaged in a 30-minute conversation about Ms. Glanville that "was not factual and defamed [her] character."  *Id*. at ¶ 41.  Mr. Etwaroo stated "in a matter-of-fact way" that Ms. Glanville had given Mr. Yourkovik "lip service."  *Id*.  Mr. Yourkovik stated, "that's why she got kicked out of the District."  *Id*.  The conversation implied that the double homicide had occurred because Ms. Glanville was not on the scene and that similar incidents were the reason Ms. Glanville had been involuntarily transferred to her current district.  *Id*.  Ms. Glanville submitted a hostile work environment complaint to BPD after viewing the footage.  *Id*. at ¶ 42.

After submitting the complaint to BPD, Ms. Glanville became the subject of targeted investigations that led to her deferral from promotions.  *Id*. at ¶ 46.  On December 2, 2022, Ms. Glanville was deferred from being promoted because of an allegation BPD had received "on or before the beginning of July 2022, presumably referring to the texting and driving allegations."  *Id*. at ¶ 48.  BPD's Equal Employment Opportunity director advised Ms. Glanville that "BPD was conducting an investigation to see if they could arrest her or not, threatening her with criminal actions."  *Id*.  On February 7, 2023, Ms. Glanville received a "not sustained" letter from

BPD.  *Id*. at ¶ 49.  When Ms. Glanville asked a White supervisor if she would be promoted

before the 2022 promotional list expired, she was told she was being deferred "for the third

time."  *Id*. at ¶ 49.  On February 13, 2023, Ms. Glanville was deferred from being promoted

again because of alleged "egregious or serious acts of misconduct."  *Id*. at ¶ 50.  The 2022

promotional list expired on February 14, 2023, and the 2023 list was issued on February 15,

2023.  *Id*. at ¶¶ 69, 72.

Approximately one week after the 2023 promotional list was issued, Ms. Glanville

received a notice that she was charged with having a conversation about an active case with an

internal affairs/public integrity bureau detective.  *Id*. at ¶ 54.  BPD "waited for the promotional

exam to come out before charging [Ms. Glanville], knowing it can take over a year for the

Department to conduct an investigation," which gave BPD a basis for excluding her from future

promotions.  *Id*.  Ms. Glanville was suspended pending termination on February 28, 2023,

following a decision by the disciplinary review committee.  *Id*. at ¶¶ 62–64.  Ms. Glanville

remained in that status at the time this suit was filed in December 2023.  *Id*. at ¶ 72.

On August 24, 2023, Ms. Glanville was verbally reassigned to "Adult/Juvenile Booking"

without being advised of the date and time she should report.  *Id*. at ¶¶ 55–56.  Ms. Glanville was

unable to locate a signed order or email advising of her transfer.  *Id*. at ¶ 56.  She communicated

with superiors for several days "trying to obtain more information regarding the move," but

neither had "any idea" when Ms. Glanville was to leave her current assignment and report to her

new assignment.  *Id*.  Ms. Glanville ultimately did not report to her new assignment because

BPD had previously charged other officers with responding to new assignments without proper

orders, and she felt she would "likely be targeted again and charged falsely."  *Id*. at ¶ 57.  Mr.

Howe, one of the supervisors involved in the April 29, 2022 double homicide incident, used his

position to have an internal charge filed against Ms. Glanville for failing to respond to her

assignment. *Id*. at ¶ 58.  No one involved ever showed proof of a signed reassignment order, only producing an unsigned order with Ms. Glanville's name that "had not been disseminated via email." *Id*.

Ms. Glanville was also subject to disparaging remarks and disparate treatment in 2018 and 2019.  In May of 2018, a White superior officer yelled at Ms. Glanville, repeatedly asking her "[w]hat is your problem?" and informing her all her colleagues "had a problem with Plaintiff and did not like or support her." *Id*. at ¶ 22.  In November of 2018, when Ms. Glanville's White colleague arrived at the scene of a crime to relieve her as shift supervisor, he was "belligerent and disrespectful towards" her in front of the public and media representatives, eventually abandoning his post without relieving Ms. Glanville of her duty. *Id*. at ¶ 25.  When Ms. Glanville reported the incident, she was intimidated by her White supervisor. *Id*. at ¶¶ 26, 75. She continued to be subject to targeted complaints filed by White colleagues and supervisors, yelling and insults, poor performance ratings, and denial of promotional opportunities. *Id*. at ¶¶ 27–28, 30–32, 77.  Ms. Glanville further alleges that she has been subject to a discriminatory and hostile work environment for the past several years due to her race, color, and participation in protected activities, namely filing internal and administrative complaints against BPD. *Id*. at ¶ 21.  Ms. Glanville experienced "no serious disciplinary issues prior to the incidents in this matter." *Id*. at ¶¶ 84, 106.

### B.    Administrative History

Ms. Glanville filed her first Charge of Discrimination (First Charge) with the Equal Employment Opportunity Commission (EEOC) on or about January 26, 2022, alleging retaliation and discrimination based on race, color, and sex.  ECF Nos. 12-2; 13-1 at 3.[4]  The

---

[4]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document.

events described in the First Charge range from May 18, 2018, to March 5, 2019, and were

marked as a "continuing action" on the form.  ECF No. 12-2.  The EEOC issued a Determination

and Notice of Rights on the First Charge on May 5, 2022.  ECF No. 12-3 at 2.  Ms. Glanville

declined to file suit within the prescribed deadline.  *Id*.; ECF No. 13-1 at 4.  On or about

February 23, 2023, Ms. Glanville filed her second Charge of Discrimination (Second Charge),

again alleging retaliation and discrimination based on race, color, and sex.  ECF Nos. 12-4 at 2;

13-1 at 3.  The events described in the Second Charge range from April 29, 2022, to February 21,

2023.  ECF No. 12-4.  The EEOC issued a Determination and Notice of Rights on the Second

Charge on September 21, 2023 (ECF No. 1 ¶ 10), and Ms. Glanville timely filed the instant suit

on December 14, 2023 (ECF No. 1).

## II.    Standard of Review

BPD moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6).  Rule 12(b)(6) provides that a defendant may move to dismiss a complaint on the

grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  It is fundamental that the "purpose of a Rule 12(b)(6) motion is to test the sufficiency

of a complaint."  *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Federal Rule

of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  This pleading standard is designed to "give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl.

Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks

and citation omitted).  When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept

all factual allegations in the complaint as true and draw all reasonable inferences from the facts

in favor of the plaintiff to determine if the plaintiff is entitled to the legal remedy sought.

*Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *E.I. du Pont de Nemours & Co.* v. *Kolon Indus.*,

*Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  The same does not hold true for legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556.  To determine whether the Rule 8(a)(2) pleading standard is met, the court separates the complaint's legal conclusions from the factual allegations.  *A Soc'y Without a Name* v. *Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

A complaint does not need to contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  To survive a motion to dismiss, a complaint must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The plausibility standard falls somewhere in between "probability," which is not required, and "sheer possibility," which is insufficient.  *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Ordinarily a court may not consider matters outside the pleadings when reviewing a motion to dismiss without converting it into a motion for summary judgment.  *United States ex rel. Oberg* v. *Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); Fed. R. Civ. P. 12(d).  The Court may, however, consider documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic.  *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *Robinson* v. *Am. Honda Motor Co.*, 551 F.3d 218, 222-223 (4th Cir. 2009).  A document is integral to the complaint if "by its very existence, and *not the mere information it contains*, [it] gives rise to the legal rights asserted." *Chesapeake Bay*

*Found., Inc.* v. *Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)

(emphasis in original) (internal quotation marks and citation omitted). "Courts commonly

consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the

pleading, even if the EEOC charge is not filed with the Complaint." *Bowie* v. *Univ. of Md. Med.*

*Sys.*, Civil Action No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015)

(collecting cases).

Ms. Glanville's claims center on her two EEOC Charges of Discrimination. ECF No. 1 ¶

11; 13-1 at 2–6. While she attached no documents to her Complaint, BPD attached as exhibits to

its motion to dismiss both Charges (ECF Nos. 12-2 and 12-4), the EEOC's Determination and

Notice of Rights as to the First Charge (ECF No. 12-3), and two sets of internal BPD policies

(ECF Nos. 12-5 and 12-6). In her response in opposition, Ms. Glanville attached a BPD policy

and the U.S. Department of Justice's report memorializing its investigation into the Baltimore

City Police Department (ECF No. 13-3). Because both Charges (ECF Nos. 12-2 and 12-4) and

the EEOC's Determination (ECF No. 12-3) are integral to Ms. Glanville's Complaint and their

authenticity is not disputed, the Court will consider these exhibits without converting BPD's

motion into one for summary judgment. The Court will not consider the remaining exhibits

because they are not integral to the Complaint and are unnecessary for the resolution of BPD's

motion.

## III.    Discussion

BPD moves to dismiss each of the six counts alleged in the Complaint, asserting that the

Title VII and MFEPA counts are partially time-barred and beyond the scope of the operative

Charge and that all the counts fail to state a claim under Rule 12(b)(6). ECF No. 12. Ms.

Glanville contends that the pleading standard for all counts has been met. ECF No. 13.

A.    **Timeliness and Scope**

As a preliminary matter, BPD argues that Ms. Glanville's Complaint includes claims that are both untimely and beyond the scope of the operative EEOC Charge.  ECF No. 12-1 at 9–12.  Ms. Glanville asserts that time-barred allegations may be used as background evidence supporting timely claims and to establish a pattern or practice creating a hostile work environment.  ECF No. 13-1 at 3–6.  She further argues that all allegations are reasonably related to the operative EEOC Charge, even if not explicitly enumerated in the Charge, and are therefore properly included in the Complaint.  *Id*. at 5–6.

Before filing suit under Title VII, a plaintiff must exhaust their administrative remedies by filing a Charge of Discrimination with the EEOC or appropriate state or local agency.  *Fort Bend Cnty., Tex.* v. *Davis*, 587 U.S. 541, 543-544 (2019).  Because Maryland is a deferral state, the time for filing a charge is extended from 180 to 300 days from the alleged unlawful employment practice.  *Equal Emp't Opportunity Cmm'n* v. *R&R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001) (citing 42 U.S.C. § 2000e–5(e) & (e)(1)).  A complainant is entitled to a "right-to-sue" notice from the EEOC no later than 180 days after a charge is filed, and suit must be filed within 90 days of receipt of the notice.  *Fort Bend Cnty.*, 587 U.S. at 545 (citing 42 U.S.C. § 2000e–5(f)(1)).

A Title VII plaintiff alleging "discrete discriminatory or retaliatory acts must file [a] charge within the appropriate time period."  *National R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 122 (2002).  Each discrete act, "such as termination, failure to promote, denial of transfer, or refusal to hire . . . starts a new [300 day] clock for filing charges alleging that act."  *Id.* at 113-114.  While discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges," those time barred acts may be used "as background evidence in support of a timely claim."  *Id*. at 113.  In contrast, hostile work environment claims may include

allegations that would otherwise be untimely because they "are different in kind from discrete acts" in that "[t]heir very nature involves repeated conduct" and "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115; *see also Yampierre* v. *Balt. Police Dep't*, Civil Action No. ELH-21-1209, 2022 WL 3577268, at *23 (D. Md. Aug. 18, 2022).

The administrative exhaustion requirement, among other things, serves to provide notice to the employer. *Sydnor* v. *Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012). Therefore, the scope of a plaintiff's resulting federal suit is "determined by the charge's contents." *Id.* A charge, however, does not strictly limit the scope of any federal suit. *Miles* v. *Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). As "long as a plaintiff's claims in [the] judicial complaint are reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation, [a plaintiff] may advance such claims in [the] subsequent civil suit." *Sydnor*, 681 F.3d at 594 (internal quotation marks omitted); *see also Chisholm* v. *U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981) (finding exhaustion where both EEOC Charge and federal Complaint concerned promotion discrimination but described different parts of the promotion system). The Court construes EEOC charges liberally, but that "liberal construction only stretches so far." *Nnadozie* v. *Genesis HealthCare Corp.*, 730 Fed. Appx. 151, 161 (4th Cir. 2018); *Chacko* v. *Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits.").

Ms. Glanville filed her First Charge on or about January 26, 2022, which included allegations spanning from May 18, 2018, to March 5, 2019. ECF No. 12-2. The Determination and Notice of Rights on those claims was issued on May 5, 2022. ECF No. 12-3. Ms. Glanville

declined to file suit based on that Charge and instead filed another Charge on February 23, 2023, which included events dating back to April 29, 2022. ECF No. 12-4 at 2. Therefore, only acts alleged to have occurred between April 29, 2022, and February 23, 2023, are actionable as to Ms. Glanville's discrimination and retaliation claims under Title VII. *Morgan*, 536 U.S. at 114. Acts that are alleged to have occurred before April 29, 2022, may however be considered "as background evidence in support of a timely claim" and in support of the hostile work environment and Section 1983 claims. *Id*. at 113-115.

BPD contends that two sets of allegations in the Complaint are outside the scope of the Second Charge. ECF No. 12-1 at 9–10 (arguing that Ms. Glanville omitted from the Second Charge her "alleged involuntarily transfer . . . in April 2022" and "claims concerning jokes and public conversations about her promotion deferral"). While the April 2022 involuntary transfer allegation is likely untimely for purposes of Ms. Glanville's discrimination and retaliation claims, the allegation was, in fact, mentioned in the Second Charge. ECF No. 12-4 at 3 (asserting that "why she was previously involuntarily transferred should not have been public knowledge"). Further, the alleged jokes and comments regarding Ms. Glanville's promotion deferrals are both reasonably related to the Second Charge and "can be expected to follow from a reasonable administrative investigation." *Sydnor*, 681 F.3d at 594 (internal quotation marks omitted). The two sets of allegations are therefore not beyond the scope of the Second Charge.

### B.    Race and Color Discrimination (Counts I and II)

Counts I and II allege that BPD discriminated against Ms. Glanville based on her race and color in violation of Title VII when her supervisors and upper management "denied her trainings, harassed and demeaned her before other Officers, involuntarily transferred her, opened baseless and unsustained charges against her, repeatedly denied her promotion opportunities to which she was entitled, and threatened [her] with termination." ECF No. 1 ¶¶ 84, 106.

Title VII prohibits an employer from discriminating against "any individual with respect to [ ] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may pursue a Title VII claim by offering direct evidence of discrimination or, as is more common, by offering indirect evidence through the burden shifting framework adopted by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). *Coleman* v. *Whitley*, No. 21-1181, 2022 WL 16630570, at *1 (4th Cir. Nov. 2, 2022). Under the *McDonnell Douglas* framework, a plaintiff has the burden of establishing a prima facie claim of discrimination. *Id.* To do so, a plaintiff must allege "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman* v. *Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). While a plaintiff need not establish a prima facie claim of discrimination to survive a Rule 12(b)(6) motion, the claim's elements are helpful in determining whether the plaintiff has stated a plausible claim. *Yampierre*, 2022 WL 3577268, at *19. BPD does not dispute that Ms. Glanville was a member of a protected class. ECF No. 12-1 at 13. Each of the remaining elements are discussed below.

1.   Satisfactory Job Performance

Satisfactory job performance does not require a showing that the plaintiff "was a perfect or model employee," only that the plaintiff "was qualified for the job and . . . was meeting [the] employer's legitimate expectations." *Haynes* v. *Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (noting that positive comments from the employer in the context of upcoming performance review and the award of bonuses created reasonable inference of satisfactory job performance). A plaintiff must allege satisfactory performance *at the time of the adverse employment action*. *Preston* v. *Balt. Police Dep't*, Civil Action No. ADC-23-01147, 2023 WL

8374810, at *4 (D. Md. Dec. 4, 2023) (emphasis added) (finding allegation that plaintiff was promoted six times since starting with BPD in 2000 insufficient because plaintiff failed to allege she met expectations at the time she was suspended and demoted).

BPD asserts that Ms. Glanville has failed to plead that she was both qualified for the job and meeting her employer's reasonable expectations.  ECF No. 12-1 at 13.  BPD contends that Ms. Glanville conceded that she was subject to poor performance evaluations; was unliked by supervisors; and was investigated for criminal conduct, a civilian complaint, and internal BPD complaints.  *Id*. at 13–14; ECF No. 16 at 4–5.  Ms. Glanville counters that her 27 years of service with the BPD, rise to the rank of Sergeant, and position as second on the promotional list, taken together, are sufficient to plead satisfactory job performance.  ECF No. 13-1 at 7–8.  Further, Ms. Glanville alleges that she "remains an active employee and is not subject to actual discipline, demotion or a formal performance improvement plan."  ECF No. 16 at 4 (citing ECF No. 13-1 at 7–8).  Accepting all factual allegations as true and drawing all reasonable inferences from the facts in favor of Ms. Glanville, she has sufficiently pleaded that she was qualified for the job and meeting her employer's reasonable expectations at the time of the adverse employment action.

### 2.    Adverse Employment Action

An adverse employment action is one that brings "about some disadvantageous change in an employment term or condition."  *Muldrow* v. *City of St. Louis, Mo.*, 601 U.S. 346, 354 (2024) (internal quotation marks omitted).  The United States Supreme Court has recently clarified that the harm created by the adverse employment action need not be significant, "[o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."[5]  *Id.* at 355 (holding that Title VII's phrase "discriminate against"

---

[5]  The Court "must apply the law in effect at the time it renders its decision."  *Thorpe* v. *Hous. Auth. of City of Durham*, 393 U.S. 268, 281 (1969); *see also Hollingsworth* v. *Vilsack*,

means to "treat worse . . . [b]ut neither that phrase nor any other says anything about how much worse"); *see also Downer* v. *Prince George's Cnty. Bd. of Educ.*, Civil Action No. BAH-21-1618, 2024 WL 3277563, at *11 (D. Md. July 2, 2024) (a plaintiff must only "show some harm respecting an identifiable term or condition of employment" and not that the harm was "significant, serious, or something similar") (quoting *Muldrow*, 601 U.S. at 353-355)).

Not all changes to an employee's identifiable terms or conditions of employment constitute an adverse employment action. The change must be disadvantageous. *Muldrow*, 601 U.S. at 354. An involuntary transfer without a change in duties or "loss of prestige or responsibility" does not constitute adverse action. *Downer*, 2024 WL 3277563, at *11 (finding shift transfer insufficient to plead adverse action because shifts required the same duties and there was no "loss of prestige or responsibility"); *Jackson* v. *Balt. Police Dep't*, Civil Action No. WDQ-11-3569, 2013 WL 1121412, at *6 (D. Md. Mar. 15, 2013) (finding no adverse employment action in the absence of allegations that the new assignment "has less responsibility or opportunity for promotion, or any salary implications"). On the other hand, a forced transfer that leaves an employee "worse off" with respect to employment terms or conditions is an adverse employment action. *Muldrow*, 601 U.S. at 359 (finding adverse employment action where an officer was transferred from prestigious division responsible for priority investigations to a division supervising patrol officers and performing administrative work); *Tribue* v. *Maryland*, Civil Action No. BAH-22-2732, 2024 WL 4202444, at *10 (D. Md. Sept. 13, 2024) (finding denial of assignment to a specialized unit adequate to plead adverse action).

BPD asserts that Ms. Glanville has failed to plead that she experienced an adverse employment action. ECF No. 12-1 at 14–16. Ms. Glanville counters that the four promotion

---

Civil Action No. LLA-23-2427, 2024 WL 4332118, at *8 (D.D.C. Sept. 27, 2024) ("Although the parties briefed this case before *Muldrow* was decided, it applies.").

deferrals she received after submitting a hostile work environment complaint, in addition to the verbal reassignment to Adult/Juvenile Booking, and other charges and investigations all constitute adverse employment actions. ECF No. 13-1 at 8–11. BPD's motion to dismiss was briefed before the Supreme Court decided *Muldrow*. Under the newly clarified standard, Ms. Glanville has sufficiently pleaded that she experienced an adverse employment action. Although the verbal reassignment occurred in August 2023 and is thus time barred, *see supra* Section III.A., the promotion deferrals, if true, constitute disadvantageous changes to the identifiable terms or conditions of Ms. Glanville's employment. *Hamilton* v. *Norristown State Hosp.*, Civil Action No. 23-4068, 2024 WL 3623521, at *7 (E.D. Pa. Aug. 1, 2024) (finding post-*Muldrow* that "the denial of a promotion can constitute a Title VII disparate-treatment adverse-employment action").

### 3.    Similarly Situated Employees

Finally, a plaintiff must adequately plead that the adverse employment action occurred "because of" her protected status. A plaintiff may plead a prima facie claim through the use of comparators, such as colleagues of a different race or gender who "were treated more favorably under similar circumstances." *Booth* v. *Cnty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016). Any such allegations must meet the ordinary pleading requirements. Thus, conclusory allegations that a co-worker is similarly situated without factual substantiation fail to establish a plausible claim. *Id.* at 486 (highlighting complaint's failure to identify comparator's race, job title, responsibilities, supervisor, or details regarding the allegedly analogous offense); *Jacques* v. *Balt. City Police Dep't*, Civil Action No. SAG-21-02682, 2022 WL 1061980, at *5 (D. Md. Apr. 8, 2022) ("The Complaint identifies no specific comparator . . . by name, nor does it describe—even anonymously—any comparators' job titles, responsibilities, or supervisors.");

*West* v. *Mayorkas*, Civil Action No. JKB-23-01661, 2024 WL 3878375, at *12 (D. Md. Aug. 20, 2024) (same).

A comparator should be similarly situated "'in all relevant respects.'" *Sawyers* v. *United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.2 (D. Md. 2013) (quoting *Crawford* v. *Dep't of Corr. Educ.*, Civil Action No. 3:11CV430–HEH, 2011 WL 5975254, at *6 (E.D. Va. Nov. 29, 2011)). Suitable comparators, for instance, "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood* v. *Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); *Forrest* v. *Transit Mgmt. of Charlotte, Inc.*, 245 Fed. Appx. 255, 257 (4th Cir. 2007) (internal citations omitted) ("If different decision-makers are involved, employees are generally not similarly situated."). Further, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner* v. *City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008); *Jacques*, 2022 WL 1061980, at *5.

An employer's dissimilar treatment of a comparator for a similar offense is, on its own, also insufficient. *Compare Lightner*, 545 F.3d at 265 (holding that plaintiff's comparator was too dissimilar because plaintiff was responsible for the department's compliance with ethics rules while comparator was not) *with Johnson* v. *Balt. City Police Dep't*, Civil Action No. ELH-12-2519, 2014 WL 1281602, at *20 (D. Md. Mar. 27, 2014) (finding comparator allegations sufficient when similarly situated Black police officers were denied light duty requests when White or Latino police officers were granted light duty requests by same supervisor).

Here, BPD argues that the Complaint's comparators are not similarly situated to Ms. Glanville and that their circumstances do not support a race or color discrimination claim. ECF

No. 12-1 at 16–21.  For example, BPD asserts that the comparators are too dissimilar because they "held different ranks from [Ms. Glanville], were never promoted, or were subject to different misconduct investigations."  *Id*. at 20; ECF No. 16 at 7.  Ms. Glanville asserts that the comparators "were on the same promotional list as [her] and were facing similar charges as [her], who were considered for and promoted to Lieutenant before [her]."  ECF No. 13-1 at 11.

As a preliminary matter, discrimination based on race and discrimination based on color are not synonymous.  *Daniels* v. *James Lawrence Kernan Hosp., Inc.*, Civil Action No. WMN-15-255, 2015 WL 5735397, at *3 (D. Md. Sept. 29, 2015).  "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination," such as different skin tones within a particular racial or ethnic group.  *Bryant* v. *Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002).  Here, both Ms. Glanville's EEOC Charge and Complaint are "devoid of any hint that h[er] particular skin tone motivated the alleged discrimination."  *Id.*; *see also Smith* v. *Washington Suburban Sanitary Comm'n.*, Civil Action No. RDB-04-2288, 2006 WL 4706998, at *3 (D. Md. Oct. 4, 2006), *aff'd sub nom.*, 218 Fed. Appx. 263 (4th Cir. 2007) (granting summary judgment for defendant as to plaintiff's color discrimination claim because plaintiff failed to include color-based discrimination allegation in the underlying EEOC Charge); *Sloan* v. *Johns Hopkins Hosp.*, Civil Action No. RDB-04-3563, 2005 WL 8174319, at *2 (D. Md. Sept. 15, 2005) (precluding color and sex discrimination claims because they were not included in administrative charge, not reasonably related to the race- and sexual orientation-based discrimination allegations in the charge, and would not have developed following a reasonable administrative investigation into the charge's allegations).  Although Ms. Glanville uses "Black" to "refer to h[er] race and color, h[er] allegations are rooted in discrimination based on h[er] race rather than on the shade of h[er] skin tone."  *Jarvis* v. *Enter. Fleet Servs. & Leasing Co.*, Civil Action No. DKC-07-3385, 2008 WL 11367519, at *3 (D. Md. Apr. 3, 2008).  Ms. Glanville

makes no reference to the hue of her skin tone or that of her comparators and, therefore, her color discrimination claim fails.

As to her race discrimination claim, Ms. Glanville has failed to sufficiently allege that the comparators were similarly situated "in all relevant respects" except for race. *Sawyers*, 946 F. Supp. 2d at 442 n.2 (internal citation omitted). Some of the comparators were in inapposite circumstances. *E.g.* ECF No. 1 ¶ 52 (alleging that when an unnamed White officer called Ms. Glanville a racial slur, her White supervisor was moved from her district). Other comparators were on different promotional lists for different positions. *E.g.*, *id.* (describing comparators' promotions to Captain and other unspecified positions). While the Complaint describes the nature of the charges, misconduct allegations, and/or "open and active EEO cases" brought against some of the comparators, most of the comparators lack key details. *E.g.*, *id.* at ¶ 46 (stating two White officers were promoted despite one officer being charged and having an EEO complaint filed against him); ¶ 52 (stating without further details that Hispanic officer was promoted "despite having two open EEO complaints"); and ¶ 70 (concluding that White officer "was facing similar charges" to Ms. Glanville). Furthermore, two key details are unclear from these allegations—whether the comparators had the same supervisors and job responsibilities as Ms. Glanville. *Jacques*, 2022 WL 1061980, at *5; *Forrest*, 245 Fed. Appx. at 257 (internal citations omitted) ("If different decision-makers are involved, employees are generally not similarly situated."). Finally, the Court must note that one comparator (who was on the same promotional list as Ms. Glanville for the same promotional level and had an open EEO case) is alleged to be the same race as her. ECF No. 1 ¶ 70. Because Ms. Glanville has failed to adequately plead facts establishing comparators, her race discrimination claim must be dismissed.

### C.    Retaliation (Count IV-Title VII)

Count IV-Title VII alleges that BPD employees retaliated against Ms. Glanville in

violation of Title VII after she filed internal and external complaints regarding BPD's "unlawful

and discriminatory employment practices."  ECF No. 1 ¶¶ 136–139.  Title VII prohibits an

employer from discriminating against an employee for "participating in a Title VII proceeding or

opposing an employer's discriminatory practices."  *Perkins* v. *Int'l Paper Co.*, 936 F.3d 196, 213

(4th Cir. 2019); *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53 (2006); *see* 42 U.S.C.

§ 2000e-3(a).  To state a retaliation claim, plaintiffs must allege that they: (1) "engaged in a

protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely

against the plaintiff; and (3) the protected activity was causally connected to the employer's

adverse action."  *Okoli* v. *City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011); *Roberts* v. *Glenn*

*Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) ("Complaints raised through internal

company procedures are recognized as protected activity.").  "At the motion to dismiss stage, a

plaintiff need not prove these elements, but need only plausibly allege facts that allow a court to

reasonably infer that the elements are satisfied."  *West*, 2024 WL 3878375, at *12 (internal

citation omitted).

An alleged action is adverse if it "well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination."  *Wonasue* v. *Univ. of Md. Alumni Ass'n*, 984 F.

Supp. 2d 480, 491-492 (D. Md. 2013).  This standard is more onerous than that applied to a post-

*Muldrow* discrimination claim because the retaliatory action must be "materially adverse,

meaning it causes significant harm."  *Muldrow*, 601 U.S. at 357-358 (internal quotation marks

and citations omitted) (declining to extend lower pleading standard for "adverse action" to

retaliation claims because "test was meant to capture those (and only those) employer actions

serious enough to dissuade[ ] a reasonable worker from making or supporting a charge of

discrimination.").  An adverse action "need not be employment or workplace-related in order to sustain a retaliation claim."  *Strothers* v. *City of Laurel, Md.*, 895 F.3d 317, 327 n.3 (4th Cir. 2018) (internal citation omitted).  Adverse actions do not, however, include "petty slights, minor annoyances, and simple lack of good manners."  *Burlington*, 548 U.S. at 68.  Therefore, "personal conflict alone does not constitute retaliation."  *Spencer* v. *Va. State Univ.*, 919 F.3d 199, 208 (4th Cir. 2019).  On the other hand, "'discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion' constitute adverse actions."  *Yampierre*, 2022 WL 3577268, at *34 (quoting *Boone* v. *Goldin*, 178 F.3d 253, 255 (4th Cir. 1999), *abrogated on other grounds by Muldrow*, 601 U.S. 346)).  The initiation of internal and criminal investigations may also qualify as adverse actions.  *Id*. at *38.

 To sufficiently plead a plausible retaliation claim the Complaint must also allege a causal connection between the protected activity and the adverse action.  *Penley* v. *McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017).  Causation may be inferred when there is a close temporal proximity between the two events.  *Id*.  "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."  *Dowe* v. *Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (internal citation omitted).  Notably, "a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.'"  *Clarke* v. *DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 790 (D. Md. 2013) (quoting *King* v. *Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).  In the absence of sufficient temporal proximity, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation."  *Lettieri* v. *Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal citations omitted).

Here, BPD argues that Ms. Glanville has failed to plead any facts that would constitute an adverse action and, in any event, she fails to allege a causal connection between the protected activities and adverse action. ECF Nos. 12-1 at 21–25; 16 at 8–10. Ms. Glanville in turn argues that the April 29, 2022 double homicide incident; four promotion deferrals; general disparaging remarks; and the August 2023 reassignment all constitute adverse actions. ECF No. 13-1 at 12–14. She further argues that these actions should not be viewed as isolated incidents but rather as part of a "pattern of discriminatory treatment that went on for several years." *Id*. at 14.

Ms. Glanville's well-pleaded allegations, however, fall short. First, Ms. Glanville does not clearly identify the protected activity tied to the retaliation claim. *E.g.*, ECF No. 1 ¶ 137 ("Plaintiff faced retaliation for the complaints she submitted internally with the Department, and then externally with the EEOC"). The Complaint broadly describes internal complaints filed in 2015, 2018, and on May 1, 2022, in addition to the First Charge filed with the EEOC in January 2022. *Id*. at ¶¶ 52, 23, 42, and 33. Second, as discussed *supra* Section III.A., because of the timing of the filing of Ms. Glanville's EEOC Charges and initiation of this action, her retaliation claim may only be based on alleged adverse actions between April 29, 2022 and February 23, 2023. The Court therefore cannot consider the remarks to which Ms. Glanville alleges she was subjected before April 29, 2022, and the August 2023 reassignment.[6] *See* ECF No. 13-1 at 13 (citing ECF No. 1 ¶¶ 22 and 67). Only the remaining alleged adverse actions—the April 29, 2022 double homicide incident; four promotion deferrals; and the February 2023 charge—may be used in support of the retaliation claim.

---

[6] While a retaliation claim may be predicated on the "continuation of the retaliation [ ] alleged in the [timely EEOC] charge," the alleged retaliatory act must still "relate[ ] back" to the administrative charge or else the requirements of administrative exhaustion will apply. *Jones* v. *Calvert Grp., Ltd.*, 551 F.3d 297, 304 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cnty.*, 587 U.S. at 547. Here, the August 2023 reassignment does not in any way relate back to the claims in the Second Charge and therefore the factual allegation may not be used to support a retaliation claim.

None of these allegations are sufficient to support Ms. Glanville's retaliation claim. First, engaging in a "very unprofessional conversation" about Ms. Glanville, stating that she was giving a colleague "lip service," and that her attitude was the reason why she got kicked out of the district does not rise to the level of "materially adverse, meaning it causes significant harm." ECF No. 1 ¶ 41; *Muldrow*, 601 U.S. at 357-358. Second, the four promotion deferrals and February 2023 charge may constitute adverse actions, but the Complaint fails to allege a sufficient causal connection between any of the previously described protected activities and the deferrals and/or charge. The seven-month gap in time between the May 1, 2022 internal complaint and first promotion deferral on December 2, 2022, is too great to support an inference of a causal connection. *E.g.*, *Roberts*, 998 F.3d at 127 (holding three-month gap was too long). Similarly, these allegations, taken together, do not establish a "recurring retaliatory animus during the intervening period." *Lettieri*, 478 F.3d at 650 (internal citations omitted). The retaliation claim will therefore be dismissed.

### D.    Hostile Work Environment (Count III)

Count III alleges that BPD employees create a hostile work environment based on Ms. Glanville's "race, color, sex, and retaliation for protected activity." ECF No. 1 ¶¶ 128–129. It further alleges that BPD knew of the "harassment, discrimination, and disparate treatment" but "failed to address the problems." *Id*. at ¶ 131. Title VII prohibits an employer from subjecting their employees "to a hostile work environment on the basis of their membership in a protected class." *Yampierre*, 2022 WL 3577268, at *20. To state a hostile work environment claim, a plaintiff must allege that there was "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race[, color, or protected activity]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which

is imputable to the employer." *Boyer-Liberto* v. *Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

"The first element of a hostile environment claim, unwelcome conduct, is not a high hurdle." *Strothers*, 895 F.3d at 328-329 (stating that plaintiff may satisfy element "simply by voicing her objection to the alleged harasser or to the employer"); *Pitts* v. *Balt. Police Dep't*, Civil Action No. RDB-22-1404, 2023 WL 3158705, at *8 (D. Md. Apr. 28, 2023) (filing formal complaints in response to harassment satisfies this element).

As to the second element, plaintiffs must show the harassment occurred "because of" their protected status. *Strothers*, 895 F.3d at 329. This requires specific factual allegations. *Causey* v. *Balog*, 162 F.3d 795, 801-802 (4th Cir. 1998) (conclusory statements regarding employer's differential treatment were insufficient for hostile work environment claim). If the plaintiff cannot point to conduct that is "inherently suggestive of bias on the basis of race," then she may establish "[a]n inference of race . . . discrimination . . . based on a comparison to the treatment of similarly situated co-workers of different races . . ., if those colleagues were treated more favorably under similar circumstances." *West*, 2024 WL 3878375, at *10, *10 n.8.

As to the third element, allegations that harassing conduct was "objectively severe or pervasive" must clear "a high bar." *Perkins*, 936 F.3d at 208 (internal quotation marks and citation omitted) (discussing the "steep requirements" of a hostile work environment claim). To determine whether conduct is severe or pervasive, the Court reviews both subjective and objective components considering whether the plaintiff "subjectively perceive[d] the environment to be abusive" and whether a reasonable person would find the environment hostile or abusive. *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The Court examines the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

23

unreasonably interferes with an employee's work performance." *Id*. at 23. Incidents that cause bruised or wounded feelings, such as "rude treatment," "callous behavior," "routine difference of opinion," or "personality conflict[s]" are not cognizable under Title VII. *Equal Emp't Opportunity Cmm'n* v. *Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-316 (4th Cir. 2008); *see also Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII is not "a general civility code for the American workplace."). A plaintiff must allege "instances where the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere." *Sunbelt Rentals, Inc.*, 521 F.3d at 316 (internal quotation marks omitted).

Finally, the conduct must be imputable to the employer. "[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree* v. *Scollon Prods., Inc.*, 335 F.3d 325, 333-334 (4th Cir. 2003) (en banc) (internal citations omitted).

Here, BPD argues that Ms. Glanville fails to adequately plead the second and third elements of a hostile work environment claim: that the conduct was based on her protected status—her race, color, sex, or protected activity—and that the conduct was sufficiently severe and pervasive. ECF No. 12-1 at 25–28; ECF No. 16 at 11–12. In response, Ms. Glanville asserts that she "has satisfied the first and second elements of a hostile work environment claim as evidenced in the previously mentioned sections of" her briefing and the Complaint. ECF No. 13-1 at 14–15. She further asserts that the "discriminatory and demeaning occurrences involving unwelcomed verbal or physical conduct" she was subjected to was severe and pervasive enough to alter the conditions of her employment. *Id*. at 15.

The Court finds that while Ms. Glanville sufficiently pleaded unwelcome conduct, she has failed to plead that the conduct was based on her "race, color, sex, and [participation in a]

protected activity." ECF No. 1 ¶¶ 128–129. The Complaint lacks any allegations regarding conduct "inherently suggestive of bias on the basis of [protected class]," and, like the discrimination claims, fails to plead an inference of discrimination through the use of comparators. *West*, 2024 WL 3878375, at *10 n.8. The hostile work environment claim must therefore be dismissed.

### E.       Section 1983 Claim (Count IV-§ 1983)

Count IV-§ 1983 alleges that BPD violated the First and Fourteenth Amendments and 42 U.S.C. § 1981 when its management officials discriminated and retaliated against Ms. Glanville for engaging in protected activities. ECF No. 1 ¶¶ 155–160. Section 1983 prohibits a person from acting under color of law to subject another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright* v. *Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). To state a claim under Section 1983, a plaintiff must allege "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines* v. *Balt. Police Dep't*, 657 F. Supp. 3d 708, 748 (D. Md. 2023) (quoting *West* v. *Atkins*, 487 U.S. 42, 48 (1988)).

"Section 1983 does not provide for respondeat superior liability." *Gordon* v. *Md. State Police*, Civil Action No. GLR-22-1699, 2023 WL 6161089, at *9 (D. Md. Sept. 21, 2023). Under Section 1983, "a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'"[7] *Lozman* v.

_____

[7] As this Court has repeatedly held, BPD is a state entity under Maryland law, but is considered a municipal entity subject to suit for the purposes of § 1983. *Johnson* v. *Balt. Police*

*City of Riviera Beach, Fla.*, 585 U.S. 87, 95 (2018) (quoting *Monell* v. *New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  An official policy or custom may be found in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle* v. *Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks and citation omitted) (alteration in original).  A plaintiff cannot, however, "rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of [the] specific injury or that it was the moving force behind [the] deprivation."  *Carter* v. *Morris*, 164 F.3d 215, 218 (4th Cir. 1999).  Instead, a plaintiff must identify the specific policy or custom, fairly attribute the policy or custom to the municipality, and provide the "necessary affirmative link between identified policy or custom and specific violation."  *Spell* v. *McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987) (internal quotation marks and citation omitted).  A plaintiff asserting a failure to train theory of liability must plead "(1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training."  *Lewis* v. *Simms*, Civil Action No. AW-11-2172, 2012 WL 254024, at *3 (D. Md. Jan. 26, 2012), *aff'd*, 582 Fed. Appx. 180 (4th Cir. 2014).

Here, Ms. Glanville's allegations do not state a plausible Section 1983 claim.  First, regardless of whether discrimination and retaliation claims are plead as violations of Title VII, Section 1981, or Section 1983, the prima facie elements are the same.  *Boyer-Liberto*, 786 F.3d at 281; *Love-Lane* v. *Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (internal citations omitted).

---

*Dep't*, Civil Action No. MJM-22-1356, 2023 WL 6381487, at *10 (D. Md. Sept. 29, 2023) (collecting cases).

Because Ms. Glanville has not adequately pleaded a claim for discrimination or retaliation under Title VII, *see supra* III.B.-D., her Section 1983 claim fails as well. *Mosely* v. *N. Va. Cmty. Coll.*, No. 96-2269, 1997 WL 716431, at *2, 129 F.3d 1259 (Table) (4th Cir. Nov. 18, 1997); *Sawicki* v. *Morgan State Univ.*, Civil Action No. WMN-03-1600, 2005 WL 5351448, at *14 (D. Md. Aug. 2, 2005), *aff'd*, 170 Fed. Appx. 271 (4th Cir. 2006).

Second, her allegations regarding the existence of a BPD custom or policy that caused the alleged discrimination and retaliation are conclusory and devoid of specific facts. Ms. Glanville asserts in summary fashion that the alleged retaliation formed "part of an institutional practice or custom, constituting an official policy" of BPD and that BPD "failed to adopt clear policies and failed to properly train its management officials in handling, managing, and protecting employees who engage in statutorily[]protected activities." ECF No. 1 ¶¶ 161, 163. This Court has previously found nearly identical allegations insufficient to state a plausible 1983 claim against BPD. *Forrest* v. *Balt. City, Md.: Balt. Police Dep't*, Civil Action No. JMC-22-3220, 2023 WL 3847429, at *12 (D. Md. June 6, 2023); *Jacques* v. *Balt. City Police Dep't*, Civil Action No. BAH-21-2682, 2023 WL 3198122, at *11 (D. Md. May 2, 2023). This claim must therefore be dismissed.

### F.    MFEPA

Finally, Ms. Glanville alleges that BPD violated MFEPA when its supervisors and upper management harassed her because of her race, color, and sex. ECF No. 1 ¶¶ 176–181. MFEPA "is the state analogue of Title VII." *Lowman* v. *Md. Aviation Admin.*, Civil Action No. JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019). Because "Title VII case law applies to the adjudication of [M]FEPA claims," Ms. Glanville's MFEPA claims fail for the same reasons as her Title VII claims. *Gaines*, 657 F. Supp. 3d at 756; *see also Copes* v. *Johns Hopkins Univ. Applied Physics Lab'y, LLC*, Civil Action No. RDB-23-2306, 2024 WL 3424041, at *4 (D. Md.

July 16, 2024) (applying Title VII analysis to MFEPA claims because "MFEPA adopts the same

substantive standards and burden of proof as Title VII").[8]

## IV.    Conclusion

For the foregoing reasons, BPD's motion to dismiss (ECF No. 12) is granted.  Ms.

Glanville is granted leave to file an amended complaint.  A separate Order follows.


Date:  December 31, 2024                                    _____/s/_____
                                                           Erin Aslan
                                                           United States Magistrate Judge

---

[8] BPD argues in passing that it enjoys sovereign immunity from MFEPA claims.  ECF No. 12-1 at 12 n.6.  While this Court has previously held that BPD is immune from MFEPA claims raised in federal court, at least one decision has suggested that a change in Maryland law may have called this conclusion into question.  *Compare*, *e.g.*, *Effland* v. *Balt. Police Dep't*, Civil Action No. CCB-20-3503, 2022 WL 3107144, at *6 (D. Md. Aug. 4, 2022) *with Yampierre*, 2022 WL 3577268, at *47 n.24; *see also Forrest*, 2023 WL 3847429, at *13 (discussing the conflicting decisions).  Because there is an alternative basis for dismissal of this claim, resolution of this question is unnecessary at this juncture.  *Ortiz* v. *Balt. Police Dep't*, Civil Action No. SAG-22-01396, 2023 WL 1801965, at *5 n.4 (D. Md. Feb. 7, 2023).