UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIMBERLY GLANVILLE,                    *

    Plaintiff,                         *

v.                                     *           Civil Action No. EA-23-3395

THE MAYOR AND CITY COUNCIL             *
OF BALTIMORE, MARYLAND:
BALTIMORE POLICE DEPARTMENT,           *

    Defendant.                         *

MEMORANDUM OPINION

Plaintiff Kimberly Glanville initiated the above-captioned action on December 14, 2023,

asserting violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et

seq*.; 42 U.S.C. § 1983; and the Maryland Fair Employment Practices Act (MFEPA), Md. Code,

Ann. State Gov't § 20-601 *et seq*., and seeking damages, equitable relief, and attorney's fees and

costs.  ECF No. 1.  Pending before the Court is Ms. Glanville's motion to vacate entry of final

judgment and for leave to late file an amended complaint.  ECF Nos. 20–21.  The motion is fully

briefed, and no hearing is necessary.  ECF Nos. 22, 25; Local Rule 105.6 (D. Md. 2023).  For the

reasons set forth below, Ms. Glanville's motion is denied.

I.      BACKGROUND

On December 31, 2024, the Court granted Defendant Baltimore Police Department's

(BPD) motion to dismiss (ECF No. 12) and dismissed the Complaint without prejudice (ECF

Nos. 17, 18).[1]  *Glanville* v. *Mayor & City Council of Baltimore, Maryland: Baltimore Police

Dep't*, Civil Action No. EA-23-3395, 2024 WL 5264381 (D. Md. Dec. 31, 2024).  The Court

---

[1] As discussed in the prior Memorandum Opinion, the Court construes the Complaint as
having been brought against BPD.  *Glanville* v. *Mayor & City Council of Baltimore, Maryland:
Baltimore Police Dep't*, Civil Action No. EA-23-3395, 2024 WL 5264381, at *1 n.1 (D. Md.
Dec. 31, 2024).

also granted Ms. Glanville leave until January 30, 2025, to file an amended complaint. ECF

Nos. 17, 18. Ms. Glanville did not do so. Therefore, on January 31, 2025, the Court directed the

Clerk of the Court to dismiss the Complaint with prejudice. ECF No. 19. That same day, Ms.

Glanville filed the instant motion in which she seeks to (1) vacate the Court's entry of a final

judgment under Federal Rules of Civil Procedure 6(b)(1)(B) and 60(b)(1) and Local Rule 105.10

and (2) late file an amended complaint. ECF No. 20 at 1.[2]

In support of her motion, Ms. Glanville asserts that "[i]t appears during the calendaring

process, the filing deadline was inadvertently set on the firm calendar by the firm staff as January

31, 2025, which is one day after the January 30, 2025 filing deadline." *Id.* at ¶ 2. Ms. Glanville

further asserts that when her attorney "realized the inadvertent mis-calendaring," she "acted

promptly to rectify the mistake." *Id.* at ¶ 3. BPD opposes Ms. Glanville's motion, arguing that

her "proffered reason for delay – a deadline miscalculation or 'clerical error' – is insufficient" to

entitle her to relief. ECF No. 22 at 3. Both Ms. Glanville's motion and BPD's opposition frame

the relevant inquiry as arising under the "excusable neglect" subsection of Federal Rule of Civil

Procedure 60(b). ECF Nos. 20, 22, 25.

## II.     DISCUSSION

The Fourth Circuit Court of Appeals has "repeatedly held that a motion to amend filed

after a judgment of dismissal has been entered cannot be considered until the judgment is

vacated" pursuant to Federal Rule of Civil Procedure 59(e) or 60(b). *Calvary Christian Ctr.* v.

*City of Fredericksburg, Va.*, 710 F.3d 536, 539 (4th Cir. 2013) (collecting cases). As the Court

of Appeals has explained:

---

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case
Files system (CM/ECF) printed at the top of the cited document.

> Each Rule serves a procedural purpose that fits into the larger function of providing an orderly process to adjudicate actions. When, in an action, the plaintiff wishes to amend its complaint, Rule 15 governs the process.  But when the action has been dismissed, there is no pending complaint to amend.

*Id.* at 540.  Thus, only "after satisfying the standard for vacating the judgment under the applicable rule . . . the court may consider the motion to amend under the established standard for doing so under Rule 15(a)."  *Daulatzai* v. *Maryland*, 97 F.4th 166, 178 (4th Cir. 2024).

### A.    Federal Rules of Civil Procedure 59(e) and 60(b)

The difference between Rule 59(e) and Rule 60(b) "is material, both in scope and purpose, and, by their own terms, different standards apply."  *Id*. at 177.  Under Rule 59(e), a party may move "to alter or amend a judgment" within "28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The standard for granting a Rule 59(e) motion "is broad, as a court is authorized to reconsider its ruling on virtually any basis that it determines might have been an error or mistake in its judgment, although 'courts will not address new arguments or evidence that the moving party could have raised before the decision issued.'"  *Daulatzai*, 97 F.4th at 178 (quoting *Banister v. Davis*, 590 U.S. 504, 508 (2020)).  "When the motion to vacate the judgment is made under Rule 59(e), the broad standard for allowing a court to grant the motion allows the court simply to turn to the standard applicable to the motion to amend."  *Daulatzai*, 97 F.4th at 178-179; *Mayfield* v. *National Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) ("Rule 15(a) and Rule 59(e) motions rise and fall together.").  "In other words, a court should evaluate a [Rule 59(e)] postjudgment motion to amend the complaint 'under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility.'"  *Katyle* v. *Penn Nat. Gaming, Inc.*, 637 F.3d 462, 470-471 (4th Cir. 2011) (quoting *Laber* v. *Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)).

Rule 60(b) authorizes a court, "[o]n motion and just terms," to "relieve a party or its legal representative from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). "[B]efore a party may seek relief under Rule 60(b), a party first must show 'timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" *Dowell* v. *State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (quoting *Werner* v. *Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). "After a party has crossed this initial threshold, [they] then must satisfy one of the six specific sections of Rule 60(b)," which includes, as relevant here, "excusable neglect." *Dowell*, 993 F.2d at 48; Fed. R. Civ. P. 60(b)(1). Thus, the timeframe in which a Rule 60(b) motion may be filed is more expansive, but the grounds on which relief may be granted are more constrained. *See Daulatzai*, 97 F.4th at 178 (noting that Rule 60(b) relief is available "long after the judgment is final") and 179 (observing that "when the motion to vacate is filed under Rule 60(b), the more restrictive standard for granting that motion must be satisfied before consideration can be given to the motion to amend").

Whether a post-judgment motion is considered under Rule 59(e) or 60(b) is dependent upon both the timing of the filing and whether the motion seeks to correct the judgment. As the Fourth Circuit has explained, "[a] post-judgment motion challenging the correctness of a district court's judgment is construed based on when the motion was filed. If the motion is filed within the [28 day] timeline in Rule 59(e), then the motion is construed as a Rule 59(e) motion, regardless of label." *Thomas* v. *South Carolina Dep't of Mental Health*, No. 23-2190, 2024 WL 4298146, at *1 (4th Cir. Sept. 26, 2024); *accord Robinson* v. *Wix Filtration Corp.*, 599 F.3d 403, 412 (4th Cir. 2010); *MLC Auto., LLC* v. *Town of S. Pines*, 532 F.3d 269, 277-278 (4th Cir. 2008). The timing prong of this inquiry appears to derive from a Fourth Circuit case decided more than forty years ago that construed a Rule 60(b) motion as a Rule 59(e) motion because of the timing of the filing. This decision held that "if a post-judgment motion is [timely] filed . . .

and calls into question the correctness of that judgment it should be treated as a motion under

Rule 59(e), however it may be formally styled." *Dove* v. *CODESCO*, 569 F.2d 807, 809 (4th

Cir. 1978) (*CODESCO*)).  The Fourth Circuit continues to cite *CODESCO* for this same

proposition.  *E.g.*, *Watkins* v. *Dervona*, No. 23-7250, 2024 WL 1714849, at *1 (4th Cir. Apr. 22,

2024); *Johnson* v. *Warden Marlboro Cnty. Det. Ctr.*, No. 23-6617, 2023 WL 7272104, at *1 (4th

Cir. Nov. 3, 2023).

Decisions of the Fourth Circuit also routinely describe a Rule 59(e) motion as one that

seeks to correct a judgment.  *Thomas*, 2024 WL 4298146, at *1 ("A post-judgment motion

*challenging the correctness of a district court's judgment* is construed based on when the motion

was filed.") (emphasis added); *accord Robinson*, 599 F.3d at 412; *MLC Auto., LLC*, 532 F.3d at

277; *CODESCO*, 569 F.2d at 809.  Case law sheds little light on what it means to challenge the

correctness of a judgment.  The United States Supreme Court has explained that "Rule 59(e) is

generally invoked 'only to support reconsideration of matters properly encompassed in a

decision on the merits.'"  *Daulatzai*, 97 F.4th at 178 (quoting *White* v. *New Hampshire Dep't of

Emp. Sec.*, 455 U.S. 445, 451 (1982)).

Here, the Order Ms. Glanville challenges, which dismissed her Complaint with prejudice

following expiration of the 30-day period for filing an amended pleading, was not a decision on

the merits.  ECF No. 19.  Indeed, Ms. Glanville does not point to any substantive error in the

Court's decision and instead focuses her argument on the premise that miscalendering the filing

deadline constitutes excusable neglect under Rule 60(b).  ECF No. 20 ¶¶ 3, 6.  At least one court

in this Circuit has found that a post-judgment motion filed 10 days after entry of judgment was

properly analyzed under Rule 60(b) because "it did not call into question the judgment's

correctness" and instead argued that there were meritorious defenses to the motion on which

judgment had been entered.  *Guzman* v. *Acuarius Night Club LLC*, No. 6:24-CV-00330-JDA,

2024 WL 3593867, at *4 (D.S.C. July 30, 2024).  Yet, the Fourth Circuit case that instructs how

a post-judgment motion should be construed also did not involve a decision on the merits.  In

*CODESCO*, the plaintiff sought to vacate a judgment of dismissal that the district court had

entered following a "well-documented" history of "[p]laintiff's dilatoriness in prosecuting the

case" that culminated in the plaintiff failing to attend a pretrial scheduling conference.  569 F.2d

at 808, 810.  It therefore appears that a motion that seeks to vacate a judgment, as opposed to

correct any substantive error in a merits decision,  satisfies the second component of a Rule 59(e)

motion.

The Fourth Circuit has recognized that the substantive analysis applied in *Guzman,* which

assesses the purpose of a post-judgment motion, may be more appropriate than a determination

based exclusively on timing.  The *MLC Auto., LLC* panel explained that the *CODESCO* rule

"was not designed to constrain a district court's substantive analysis of a post-judgment motion.

Rather, it was devised for purposes of appellate review under a previous version of Fed. R. App.

P. 4(a)."  532 F.3d at 278 (quoting *Jennings* v. *Rivers*, 394 F.3d 850, 855 (10th Cir. 2005)).  The

panel observed that since the post-*CODESCO* change in appellate procedural rules, other Courts

of Appeals "now label a motion as one under 59(e) or 60(b) 'based on the reasons expressed by

the movant, not the timing of the motion.'"  *MLC Auto., LLC*, 532 F.3d at 278 (quoting *Jennings*,

394 F.3d at 855 and citing *Obriecht* v. *Raemisch*, 517 F.3d 489, 493 (7th Cir.2008); *Derrington-

Bey* v. *District of Columbia Dep't of Corrs.*, 39 F.3d 1224, 1226 n.† (D.C. Cir. 1994)).

Nevertheless, the *MLC Auto., LLC* panel concluded that although it believed *CODESCO's* focus

on timing was "no longer appropriate," the Fourth Circuit has "continued to cite and apply" that

decision, and thus it was bound by it, as one panel "cannot overrule a prior panel."  532 F. 3d at

278.  This Court is likewise bound to apply *CODESCO's* instruction and construe Ms.

Glanville's motion as seeking relief under Rule 59(e) based on timing alone.

**B.**     **Federal Rules of Civil Procedure 59(e) and 15(a) Analysis**

As noted, *see supra* p. 3, when a motion under Rule 59(e) is accompanied by a motion to

amend a complaint under Rule 15(a), the standards under the rules are collapsed, allowing "the

court simply to turn to the standard applicable to the motion to amend." *Daulatzai*, 97 F.4th at

178-179.  Under Rule 15(a), a court evaluates the post-judgment motion to amend "under the

same legal standard as a similar motion filed before judgment was entered—for prejudice, bad

faith, or futility." *Laber*, 438 F.3d at 427.  "A proposed amendment is . . . futile if the claim it

presents would not survive a motion to dismiss." *Save Our Sound OBX, Inc.* v. *North Carolina*

*Dep't of Transportation*, 914 F.3d 213, 228 (4th Cir. 2019); *Leacock* v. *IonQ, Inc.*, Civil Action

No. DLB-22-1306, 2024 WL 3360647, at *8 (D. Md. July 10, 2024), *aff'd sub nom.*, 134 F.4th

153 (4th Cir. 2025) ("Amendment would be futile if the 'proposed amended complaint does not

properly state a claim under Rule 12(b)(6).'") (quoting *United States ex rel. Wilson* v. *Kellogg*

*Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).  Here, the proposed amendments to the

Complaint are futile because, taken together, they still fail to state a claim for relief.

Ms. Glanville's proposed amended complaint asserts that same six counts the Court

addressed in its prior Memorandum Opinion. *Glanville*, 2024 WL 5264381, at *5-13.

Familiarity with the Court's prior decision, including the Federal Rule of Civil Procedure

12(b)(6) standard of review and the Court's substantive analysis, is presumed. *Id.* at *3-13.  In

Counts I and II, Ms. Glanville again asserts race and color discrimination in violation of Title

VII.  ECF No. 21 ¶¶ 88–131.  The Court previously dismissed these counts because Ms.

Glanville had failed to plausibly allege "that the adverse employment action occurred 'because

of' her protected status." *Glanville*, 2024 WL 5264381, at *8.

Ms. Glanville's color discrimination claim was dismissed because she made "no

reference to the hue of her skin tone or that of her comparators." *Id.*  As the Court explained

previously, "[c]olor discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination," such as different skin tones within a particular racial or ethnic group." *Id.* (quoting *Bryant* v. *Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002)). In her proposed amended complaint, Ms. Glanville again fails to plausibly allege color discrimination. Although she includes additional skin tones descriptors, such references appear to be coextensive with racial and ethnic descriptors. *E.g.*, ECF No. 21 ¶ 19 ("Plaintiff, Sgt. Kimberly Glanville, is an African American (black) female."), ¶ 26 ("Lt. Ebony Lee (Black, female)"), ¶ 44 ("Captain Jai Etwaroo (Middle Eastern Descent, brown, male)"), ¶ 56(a) ("Sgt. Melvin Santiago (Hispanic, brown, male)"). Ms. Glanville does not allege discrimination based on skin tone, which occurs, for example, when an individual is treated more or less favorably because they have a lighter or darker complexion than another individual of the same racial or ethnic background. *Bryant*, 288 F.3d at 132 n.5; *Daniels* v. *James Lawrence Kernan Hosp., Inc.*, Civil Action No. WMN-15-255, 2015 WL 5735397, at *3 (D. Md. Sept. 29, 2015); *Walker* v. *Secretary of Treasury, I.R.S.*, 713 F. Supp. 403, 405-408 (N.D. Ga. 1989). As was the case previously, Ms. Glanville's discrimination allegations in the proposed amended complaint "are rooted in discrimination based on [ ] race." *Glanville*, 2024 WL 5264381, at *8. She therefore fails to state a claim for color discrimination in her proposed amended complaint.

Ms. Glanville's race discrimination claim was dismissed because she "failed to sufficiently allege that the comparators were similarly situated 'in all relevant respects' except for race." *Id.* at *9 (quoting *Sawyers* v. *United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.2 (D. Md. 2013). The new comparator allegations in Ms. Glanville's proposed amended complaint still fall short. For example, some of the new allegations assert that a comparator of the same race and gender as Ms. Glanville was *not* subjected to discriminatory treatment, thus undercutting Ms. Glanville's discrimination claim. ECF No. 21 ¶ 26 (alleging that a black

female lieutenant was not subjected to similar discriminatory treatment).  Other allegations fail to plausibly allege that the comparators were similarly situated in all relevant respects because they are conclusory and lack factual content.  *E.g.*, *id.* at ¶ 43 ("Similarly situated Sergeants who were not African American, not black, and not female were not required to write an administrative report or scrutinized for their whereabouts during the homicide incident."); *see also id.* at ¶ 50 (alleging that comparators were "similarly situated"); *id.* at ¶ 56(a)-(b) (alleging that a comparator "shares similar work responsibilities"); *id.* at ¶ 74(a) (alleging that comparators "shared similar work responsibilities [and] . . . the same first- and second-line supervisors").

As the Court explained previously, comparator "allegations must meet the ordinary pleading requirements.  Thus, conclusory allegations that a co-worker is similarly situated without factual substantiation fail to establish a plausible claim.  *Glanville*, 2024 WL 5264381, at *8; *accord Jacques* v. *Baltimore City Police Dep't*, Civil Action No. SAG-21-02682, 2022 WL 1061980, at *5 (D. Md. Apr. 8, 2022) (finding comparator allegations insufficient because, among other things, they did not "*describe*—even anonymously—any comparators' job titles, responsibilities, or supervisors") (emphasis added); *Booth* v. *County Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) (holding that "a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination").  The proposed amendment to Ms. Glanville's race discrimination claim is therefore futile.

In Count III, Ms. Glanville advances a hostile work environment claim under Title VII. ECF No. 21 ¶¶ 132–140.  As the Court set forth previously, as a component of this claim "plaintiffs must show the harassment occurred 'because of' their protected status."  *Glanville*, 2024 WL 5264381, at *11.  The Court dismissed this claim previously because the Complaint lacked "any allegations regarding conduct 'inherently suggestive of bias on the basis of

[protected class],' and, like the discrimination claims, fail[ed] to plead an inference of discrimination through the use of comparators." *Id.* at *12 (first alteration in original). The same holds true for the proposed amended complaint. The proposed amended Count III does not add any allegations regarding conduct inherently suggestive of bias and comparator allegations are insufficient for the reasons stated previously with respect to Ms. Glanville's race discrimination claim. In her proposed amended complaint Ms. Glanville added small details such as additional adverse actions (her termination in November 2024), but the proposed amendments do not correct the fundamental flaw in her pleading. ECF No. 21 ¶¶ 134, 136–138. Ms. Glanville still does not plausibly allege that the harassment occurred because of her protected status.

In Count IV, Ms. Glanville asserts a Title VII retaliation claim. *Id.* at ¶¶ 141–159. This count was dismissed for several reasons: (1) Ms. Glanville did not "clearly identify the protected activity tied to the retaliation claim"; (2) the "alleged adverse actions [were] insufficient to support [the] retaliation claim"; (3) "the Complaint fail[ed] to allege a sufficient causal connection" between the protected activities and alleged adverse actions; and (4) the allegations, taken together, d[id] not establish a 'recurring retaliatory animus during the intervening period'" *Glanville*, 2024 WL 5264381, at *10 (quoting *Lettieri* v. *Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal citations omitted)). The new allegations in the proposed amended complaint do not materially alter this analysis. Ms. Glanville identifies a series of alleged adverse actions (ECF No. 21 ¶ 144), but the proposed amended complaint does not address the other three deficiencies identified in the prior Memorandum Opinion.

In Count V, Ms. Glanville alleges a violation of 42 U.S.C. § 1983. *Id.* at ¶¶ 160–188. This claim was dismissed for two reasons. First, because Ms. Glanville had "not adequately pleaded a claim for discrimination or retaliation under Title VII . . . her Section 1983 claim

fail[ed] as well" because "regardless of whether discrimination and retaliation claims are plead

as violations of Title VII, Section 1981, or Section 1983, the prima facie elements are the same."

*Glanville*, 2024 WL 5264381, at *13.  That same analysis applies to the proposed amended

complaint.  Second, the Court found that Ms. Glanville's "allegations regarding the existence of

a BPD custom or policy that caused the alleged discrimination and retaliation [were] conclusory

and devoid of specific facts."  *Id.* (collecting cases that rejected nearly identical allegations).  In

Count V of the proposed amended complaint, Ms. Glanville includes a lengthy discussion of case

law, which cannot fill the factual voids the Court identified previously.  ECF No. 21 ¶¶ 162–166.

The additional allegations are conclusory and fail to provide factual content.  *E.g.*, *id.* at ¶ 168

("management and supervisory officials with final policy making authority conspired to

intimidate, create a hostile workplace, and retaliate" against Ms. Glanville), ¶ 169 ("This

unlawful employment practice was so persistent and widespread it constituted a custom or usage

with the force of law to intimidate and punish Plaintiff for exercising her rights and discouraging

her as well as others from engaging in protected activities to exercise such rights in the future.").

In sum, Count V, as amended, fails to plausibly allege a claim because it offers nothing more

than case citations, legal conclusions, and labels.

Finally, Count VI alleges a MFEPA violation, which is the Maryland state law analogue

of Title VII.  ECF No. 21 ¶¶ 189–196.  The Court dismissed this claim previously for the same

reasons it dismissed Ms. Glanville's Title VII claims.  *Glanville*, 2024 WL 5264381, at *13.  The

same reasoning applies here.  The new allegations relate to alleged adverse actions, which cannot

cure the other deficiencies.  For all of these reasons, granting Ms. Glanville leave to file the

proposed amended pleading would be futile.

11

C.      **Federal Rule of Civil Procedure 60(b) Analysis**

Finally, even if Ms. Glanville's motion were properly construed seeking relief under Rule

60(b), as originally styled, it would still fail.  As noted, *see supra* p. 4, a party must satisfy the

more restrictive Rule 60(b) standard for relief before the Court can consider the motion to

amend.  Assuming that Ms. Glanville has met the threshold burden of demonstrating

"(1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party,

and (4) exceptional circumstances," *Wells Fargo Bank, N.A.* v. *AMH Roman Two NC, LLC*, 859

F.3d 295, 299 (4th Cir. 2017), she fails to satisfy her burden of demonstrating excusable neglect

under Rule 60(b)(1).  *See Robinson*, 599 F.3d at 412 n.12 ("We need not address whether the

movant satisfied the four threshold requirements, however, if we find that the movant has not

sufficiently satisfied one of the Rule 60(b) grounds for relief.").

"'Excusable neglect' is not easily demonstrated, nor was it intended to be." *Thompson* v.

*E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996).  The Supreme Court has

identified four factors for a court to consider under the "excusable neglect" standard: (1) "the

danger of prejudice to the [non-movant]"; (2) "the length of the delay and its potential impact on

judicial proceedings"; (3) "the reason for the delay, including whether it was within the

reasonable control of the movant;" and (4) "whether the movant acted in good faith." *Pioneer*

*Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also Thompson*,

76 F.3d at 533 (observing that while *Pioneer* Court analyzed "excusable neglect" standard under

procedural bankruptcy rule, it referred to the Federal Rules of Civil Procedure in formulating its

definition).  "[T]he most important factor considered by a court is the reason for the delay."

*Rothenberg* v. *Marriott Intern., Inc.*, Civil Action No. CCB-08-173, 2008 WL 687033, at *1 (D.

Md. Feb. 29, 2008); *accord Gelin* v. *Baltimore Cnty, Md.*, Civil Action No. ADC-16-3694, 2019

WL 1546849, at *8 (D. Md. Apr. 9, 2019); *Marshall* v. *Marshall's TJX Cos., Inc.*, Civil Action

No. WMN-15-555, 2016 WL 1366025, at *1 (D. Md. Apr. 6, 2016).

As a preliminary matter, when considering the reason for the delay, it is well settled that

"it [is] appropriate to hold a client accountable for the mistakes of counsel." *Thompson*, 76 F.3d

at 533 (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 396-397). "A party that fails to act with

diligence will be unable to establish that [their] conduct constituted excusable neglect pursuant to

Rule 60(b)(1)." *Robinson*, 599 F.3d at 413. Therefore, "a lawyer's ignorance or carelessness do

not present cognizable grounds for relief under [Rule] 60(b)." *Evans* v. *United Life & Accident

Ins. Co.*, 871 F.2d 466, 472 (4th Cir. 1989).

Calendaring errors and poor case management are examples of "palpable oversight or

administrative failure" that falls short of excusable neglect. *E.g.*, *Symbionics Inc.* v. *Ortlieb*, 432

Fed. Appx. 216, 220 (4th Cir. 2011) (holding counsel's calendaring error did not constitute

excusable neglect permitting one-day late filing of notice of appeal under Rule 4(a)(1)); *Peters* v.

*City of Mount Rainier*, Civil Action No. GJH-14-00955, 2014 WL 4855032, at *13 (D. Md. Sept.

29, 2014) ("An inadvertent miscalculation, however, is not 'good cause' for excusing one's

failure to meet a court deadline.") (collecting cases). Similarly, a mistaken belief "is insufficient

to establish good cause." *Hansan* v. *Fairfax Cnty. Sch. Bd.*, 405 Fed. Appx. 793, 794 (4th Cir.

2010); *Agnew* v. *United Leasing Corp.*, 680 Fed. Appx. 149, 155 (4th Cir. 2017) (holding district

court did not abuse discretion in declining to permit late opposition to motion for summary

judgment because movants "failed to provide any explanation for their mistake other than the

fact that it was a mistake," falling short of excusable neglect under Rule 6(b)(1)(B)).

Here, the only explanation Ms. Glanville provided for the delay is an "inadvertent mis-

calendaring error," which courts in this Circuit have repeatedly found to be insufficient.

*Symbionics Inc.*, 432 Fed. Appx. at 220; *Thompson*, 76 F.3d at 534; *Peters*, 2014 WL 4855032,

13

at *13.  "Rather than constituting an exceptional circumstance, the neglect at issue in this case is nothing more than inexcusable run-of-the-mill inattentiveness by counsel."  *Thompson*, 76 F.3d at 535.  While the remaining *Pioneer* factors—"the danger of prejudice to the [opposing party]," "the length of the delay and its potential impact on judicial proceedings," and "whether the movant acted in good faith"—favor Ms. Glanville, the reason for the delay remains "the most important to the excusable neglect inquiry."  *Symbionics Inc.*, 432 Fed. Appx. at 219 (internal quotation marks and citations omitted).

## III.    CONCLUSION

For the foregoing reasons, Ms. Glanville's motion (ECF No. 20) is denied.  A separate Order follows.


Date:  May 9, 2025                                          /s/
                                              Erin Aslan
                                              United States Magistrate Judge